UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUZ DIAZ-LOPEZ,

     Plaintiff,

v.                                          Case No.:  6:22-cv-2179-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Luz Diaz-Lopez seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.      Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.      Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.      Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income on January 15, 2020, alleging disability beginning on August 1, 2016. (Tr. 369, 370, 655-61, 662-68). The applications were denied initially and on reconsideration. (Tr. 369, 370, 427, 428). Plaintiff requested a hearing, and on August 26, 2021, a hearing was held before Administrative Law Judge Emily Kirk ("ALJ"). (Tr. 212-48). On December 8, 2021, the ALJ entered a decision finding Plaintiff not under a disability from August 1, 2016, through the date of the decision. (Tr. 179-193).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 29, 2022. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 23, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 17).

## D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 182). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2016, the alleged onset date. (Tr. 182). The ALJ noted that the evidence showed that Plaintiff had engaged in some work activity

since the alleged onset date, but found it unnecessary to determine whether such work constituted substantial gainful activity because there existed a valid basis for denying Plaintiff's application. (Tr. 182).

At step two, the ALJ found that Plaintiff had the following severe impairments: "breast cancer; major depressive disorder; generalized anxiety disorder; celiac disease; gastroesophageal reflux disease (GERD); gastritis; hyperthyroidism; left foot disorder; right shoulder disorder; obesity." (Tr. 182). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 182).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs. She can frequently stoop, kneel, and crouch. She can occasionally crawl. She can frequently reach with the upper extremities bilaterally. She would have occasional exposure to temperatures under 40 degrees Fahrenheit and over 90 degrees Fahrenheit. She could have no exposure to unprotected heights or dangerous moving machinery. She could perform simple, one to four steps work tasks. She could have occasional interaction with the public, coworkers, and supervisors. She would require changes in the work setting be introduced gradually.

(Tr. 185).

At step four, the ALJ found Plaintiff unable to perform any past relevant work as a janitor. (Tr. 191). At step five, the ALJ found that considering Plaintiff's age (48 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 191-92). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   bagger, garment, DOT 920.687-018, light, unskilled, SVP 1[1]

(2)   price marker, DOT 209.587-034, light, unskilled, SVP 2

(3)   stock checker, DOT 299.667-014, light, unskilled, SVP 2

(Tr. 192). The ALJ concluded that Plaintiff had not been under a disability from August 1, 2016, through the date of the decision. (Tr. 192).

## II.   Analysis

On appeal, Plaintiff argues that the ALJ erred in failing to account for the total limiting effects of Plaintiff's severe physical and mental impairments, not least of which is that Plaintiff was virtually non-verbal because of her mental impairments. (Doc. 21, p. 1). Within this one issue, Plaintiff raises three issues: (1) whether the ALJ's finding that the record was "devoid" of a diagnosis of neuropathy is directly

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

contradicted by the record; (2) whether the ALJ properly considered the opinions of Ricardo Crisostomo, M.D. and Paul Estrada, NP; and (3) whether the ALJ properly considered Plaintiff's subjective complaints. (Doc. 21, p. 7, 19, 23).

### A.    Diagnosis of Neuropathy

Plaintiff argues that the ALJ was patently wrong to find the record "devoid" of a neuropathy diagnosis, and in finding neuropathy not a "medically determinable" impairment. (Doc. 21, p.7). Plaintiff argues that both Ricardo Crisostomo, M.D. and Rebeca Perez, M.D. diagnosed Plaintiff with neuropathy based on persistent arm pain and numbness. (Doc. 21, p. 7). Plaintiff claims that the ALJ substituted her interpretation of the medical records for those of the medical professionals. (Doc. 21, p. 7-8). Plaintiff also claims that this error is harmful because at step five of the sequential evaluation, the ALJ named jobs that require frequent reaching, handling, and fingering. (Doc. 21, p. 8).

At step two, the ALJ found Plaintiff had medically determinable and severe impairments of "breast cancer; major depressive disorder; generalized anxiety disorder; celiac disease; gastroesophageal reflux disease (GERD); gastritis; hyperthyroidism; left foot disorder; right shoulder disorder; [and] obesity. (Tr. 182). The ALJ also found:

> Neuropathy is a non-medically determinable impairment because the record is devoid of this diagnosis. The undersigned acknowledges that the claimant reported some numbness in the right arm on September 6, 2017. However, she denied any

> numbness in the hands and feet (4F/10, 7F, 10F). Social
> Security Ruling 16-3p states: "Under our regulations, an
> individual's statements of symptoms alone are not enough to
> establish the existence of a physical or mental impairment or
> disability." Here, the record shows that the claimant has not
> undergone treatment for neuropathy, and the physical
> examinations reveal relatively benign findings. Therefore, in
> the absence of laboratory or clinical findings or medical
> observations validating the symptoms, the existence of this
> physical impairment cannot be medically determined.

(Tr. 182).

Plaintiff contends that she was diagnosed with peripheral sensory neuropathy and brachial neuritis on the right. (Doc. 21, p. 7). In support, she cites a July 2018 medical report from Dr. Perez who assessed Plaintiff with peripheral sensory neuropathy based on Plaintiff complaints of right forearm pain, right upper arm pain, with numbness and tingling. (Tr. 873-74). On examination, Dr. Perez found Plaintiff's right wrist was positive for numbness. (Tr. 874). Plaintiff also cites a February 2021 Physical Medical Source Statement, in which Dr. Crisostomo also found Plaintiff had polyneuropathy due to chemotherapy. (Tr. 1285).

While the medical records may not be "devoid" of a neuropathy diagnosis, the ALJ acknowledged that Plaintiff complained of some numbness in the right arm in September 2017, but denied any numbness in her hands and feet. (Tr. 182). Indeed, the medical records support occasional findings of some numbness at times in the right arm and a one time finding of numbness in her wrist. (Tr. 872, 874, 879, 882), But as the ALJ noted, Plaintiff also denied at times any numbness or tingling,

specifically reported none in her hands and feet, and examinations showed relatively benign musculoskeletal findings. (*See e.g.*, Tr. 182, 968, 1056-57 (no numbness anywhere), 1060-61 (no numbness anywhere), 1063-64 (reported some numbness in right arm, but no numbness in hands and feet and full strength and tone in extremities), 1066-67 (no numbness full motor strength and tone in extremities), 1074-75 (some neuropathy, but full motor strength and tone), 1111 (hands have no swelling, tenderness, fine manipulation normal, grip strength 5/5 bilaterally)).[2] The ALJ also noted that Plaintiff has undergone no treatment for neuropathy. (Tr. 182).

Even if the ALJ incorrectly noted that the record is "devoid" of a neuropathy diagnosis, the error is harmless. At step two of the sequential evaluation, the ALJ must consider the medical severity of a plaintiff's impairments. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). "However, a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Id.* (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986)). Plaintiff focuses on her diagnosis of neuropathy. Yet she cites no records to support the notion that this impairment affects her ability to work. Thus, even if the ALJ erred in finding the record "devoid" of a diagnosis for neuropathy, the ALJ

---

[2] The medical records contain many examinations when no neuropathy was present. (*See, e.g.*, Tr. 210, 1200, 1205, 1209, 1216, 1220, 1269, 1392).

considered Plaintiff's allegations of numbness in the right arm and properly reasoned that this impairment was not a medically determinable impairment because, among other things, Plaintiff had not shown this limitation affected her ability to work.

### B.   Opinions of Ricardo Crisostomo and Paul Estrada NP

Plaintiff contends that the ALJ erred in finding the opinions of both Dr. Crisostomo and Nurse Practitioner Estrada not persuasive. The same legal standard applies to both these opinions.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other

evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R.

§§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### 1.    Dr. Crisostomo's Opinion

Plaintiff argues that Dr. Crisostomo based his opinion on Plaintiff's multiple physical impairments as well as on her mental impairments. (Doc. 21, p. 19). Plaintiff claims the ALJ focused on a select few and largely irrelevant findings to determine that Dr. Crisostomo's opinion was unpersuasive. (Doc. 21, p. 19-20). Thus, Plaintiff argues substantial evidence does not support the ALJ's findings. (Doc. 21, p. 20-21).

In a February 25, 2021 Physical Medical Source Statement, Dr. Crisostomo listed Plaintiff's diagnoses as malignant neoplasm of breast; chronic pain; polyneuropathy due to chemotherapy, and anemia. (Tr. 1285). Dr. Crisostomo also identified psychological conditions of depression, anxiety, and polyneuropathy that affect Plaintiff's physical condition. (Tr. 1285). He found Plaintiff: could walk 1 block, sit or stand for 5 minutes at a time, and sit or stand less than 2 hours in an 8-hour day; needed to be able to shift positions at work; walk every 10 minutes for 7 minutes at a time; needed a break every hour for 10 minutes, based on her chronic

fatigue, pain, paresthesia, numbness, and adverse effects of medication; and needed to elevate her legs while sitting, based on her chronic pain, numbness, and neuropathy. (Tr. 1285-86). Dr. Crisostomo also found Plaintiff could rarely lift 10 pounds, rarely twist or stoop, occasionally climb stairs, and never crouch, squat, or climb ladders. (Tr 1286). He further found Plaintiff had significant limitations in reaching, handling, or fingering. (Tr. 1287). He found Plaintiff would be off task more than 25% of the time, capable of moderate stress, would have good days and bad days, and would miss more than 4 days per month of work. (Tr. 1287). Dr. Crisostomo found Plaintiff, "gets very depressed due to the pain she experiences." (Tr. 1287).

After summarizing Dr. Crisostomo's medical source statement, the ALJ found:

> This opinion is not persuasive, as it is inconsistent with and not supported by Dr. Crisostomo's own treatment records, revealing relatively benign findings. For example, on March 4, 2020 and April 22, 2021, Dr. Crisostomo noted musculoskeletal range of motion was preserved (9F/4, 22F/19). Although the undersigned acknowledges that the record as a whole supports some physical limitations, this opinion is an overestimate of the severity of the claimant's physical impairments. This opinion is also vague, as it does not indicate a date of onset. In addition, the opinion regarding absenteeism is unsupported because the record shows the claimant's treatment for both physical and mental impairments is conservative, consisting primarily of medication management follow up visits. Although the claimant had to undergo chemotherapy, since October 24, 2017, follow up studies demonstrated no recurrent breast cancer, and records reflect that she received no significant breast cancer treatment from

> 2017 until 2020 (1F/2, 4F/7). This opinion is also inconsistent
> with and not supported by the claimant's own earnings records,
> showing she worked after the alleged onset date, specifically
> during 2017 and 2018 (5D).

(Tr. 190).

In essence, the ALJ found Dr. Crisostomo's opinion unsupported by his own treatment records that showed relative benign findings, such as Plaintiff's range of motion was preserved. (Tr. 190). The ALJ also found the amount of absenteeism unsupported by the relatively conservative treatment received. (Tr. 190). She further found the opinion inconsistent with Plaintiff's earning records that showed she worked after the alleged onset date in 2017 and 2018. (Tr. 190).

Plaintiff argues that Dr. Crisostomo based his opinion on Plaintiff's multiple physical and mental impairments and evaluated the total limiting effects of her impairments in arriving at his opinion. (Doc. 21, p. 19). Nevertheless, the ALJ also considered all of Plaintiffs impairments in arriving at the RFC determination. (Tr. 185). Plaintiff fails to show that the ALJ overlooked any of Plaintiff's impairments.

Next, Plaintiff claims that she received many treatments and cited a report from Dr. Crisostomo about her being hampered by osteoarthritis, having abdominal bloating, suffering from celiac disease, and trying multiple psychiatric medications. (Doc. 21, p. 20-21). Yet, these records were submitted to the Appeals Council, not to the ALJ, and the Appeal Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2,

277). Thus, the ALJ had no opportunity to review this evidence and could not have erred based on this evidence.

Finally, Plaintiff argues that even though she tried to work after her alleged onset date, her work was not on a full-time basis and did not constitute substantial gainful employment. (Doc. 21, p. 21). As a result, Plaintiff claims that this work does not show that she is able to work on a full-time basis. (Doc. 21, p. 21). In the decision, the ALJ simply found that the very severe limitations found by Dr. Crisostomo conflicted with Plaintiff's earnings statement that showed she worked after the alleged onset. (Tr. 190). The ALJ used this information as one additional factor to find Dr. Crisostomo's opinion unpersuasive. Substantial evidence supports the ALJ's persuasiveness finding on Dr. Crisostomo's opinion.

### 2. NP Estrada's Opinion

Plaintiff contends that the ALJ improperly chose select references to boilerplate language in the medical records to determine Plaintiff's verbal abilities and to find NP Estrada's opinion not persuasive. (Doc. 21, p. 21-22). Plaintiff claims other evidence aligned with NP Estrada's finding that Plaintiff was nonverbal. (Doc. 21, p. 22).

On March 18, 2021, NP Estrada completed a Mental Residual Functional Capacity Statement about Plaintiff's mental limitations. (Tr. 1306-1309). NP Estrada noted that Plaintiff was treated with antidepressants, antianxiety medication,

and antipsychotic medication with poor response. (Tr. 1306). NP Estrada found, "patient is non-verbal for the most part, unable to maintain eye contact, eyes wander all over when [spoken] to. She is unable to maintain a conversation." (Tr. 1306). He found these impairments existed since May 2019 and that Plaintiff's prognosis was poor. (Tr. 1306-1307). In all areas of Mental Abilities for Understanding and Memory, Mental Abilities for Sustained Concentration and Memory, Social Interaction, and Mental Abilities for Adaption, NP Estrada determined Plaintiff's abilities precluded performance for 15% or more of an 8-hour workday. (Tr. 1307-1308). NP Estrada found Plaintiff had educational limitations, was non-verbal, could not follow directions, and was disconnected with reality. (Tr. 1308). He found Plaintiff would be off task more than 30% of the time, miss 5 or more days per month of work, be unable to complete a full workday for 5 or more days per month, and would work at a less than 50% efficiency level. (Tr. 1308-1309). NP Estrada also found Plaintiff rarely spoke, her eyes wandered in all directions, and she could not answer simple questions. (Tr. 1309). He concluded that Plaintiff could not work. (Tr. 1309).

In the decision, the ALJ summarized NP Estrada's findings, and then determined:

> This opinion is not persuasive because it is inconsistent with and not supported by the record as a whole. For example, with respect as to whether the claimant is nonverbal, treatment notes dated February 23, 2021 and April 22, 2021 indicate the

claimant "voiced good insight and comprehension" (22F/13, 19). Similarly, she was noted to "verbalize" understanding of her treatment options and "verbally consented" to telehealth visits (See e.g., 11F/53). Mental status examinations have shown her eye contact has been good; behavior has been cooperative; and social skills have been adequate. Moreover, speech has been noted to be within normal limits (3F/7, 6F/4, 12). Treatment notes indicate she was somewhat improving with medications and had good tolerance and response (12F/3). A PHQ-9 depression screening conducted on May 6, 2021 indicated only mild depression. Finally, she has been noted to be able to perform her activities of daily living (19F/3). With regard to the opinion that the claimant is unable to work, pursuant to 20 CFR 404.1520b(c) and 416.920b(c), the undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive.

(Tr. 190-91).

In summary, the ALJ found NP Estrada's opinion inconsistent with and unsupported by the record. (Tr. 190-91). The ALJ cited treatment notes showing Plaintiff was verbal, understood her treatment options, and consented to a telehealth visit. (Tr. 1191). The ALJ also cited medical records showing Plaintiff had good eye contact, was cooperative, had adequate social skills, and adequately performed her activities of daily living. (Tr. 191).

Plaintiff argues that the ALJ pointed to highly selective references and boilerplate language to discount NP Estrada's opinion. (Doc. 21, p. 22). Plaintiff then cites to medical records dated after the ALJ's December 8, 2021 decision to support her argument. (*See* Doc. 21, p. 22 (citing Tr. 127 (dated 2/2/2022), and Tr.135 (dated 3/16/2022)). These records were submitted to the Appeals Council and

the ALJ did not have the opportunity to review them when rendering her decision. Plus, the ALJ cited treatment records from Dr. Crisostomo immediately before and after the date of NP Estrada's opinion of March 2021. (Tr. 191). As the ALJ noted, in February and April 2021, Dr. Crisostomo found Plaintiff was alert, oriented, cooperative, and had no abnormal behavior or speech. (Tr. 1345, 1351). The ALJ cited other records also showing that Plaintiff had good eye contact, was cooperative, and had adequate social skills. (Tr. 191).

In addition, on March 15, 2021 – a few days before his March 18, 2021 opinion – NP Estrada conducted a mental status exam of Plaintiff. (Tr. 1304). At this exam, NP Estrada found: Plaintiff was calm, cooperative; her speech and language were appropriate and clear; her mood was anxious and depressed; her affect was congruent and appropriate; her thought process was logical, coherent, and relevant; her thought content was within reality appropriate for her age; her attention was adequate; her concentration was adequate; her insight was adequate; her judgment adequate; and her ability to complete activities of daily living was adequate. (Tr. 1304). This mental status examination directly conflicts with NP Estrada's opinion that Plaintiff was nonverbal and unable to maintain eye contact. Plus, his opinion provides no explanation for this conflict. Thus, substantial evidence supports the ALJ's finding that NP Estrada's opinion is unsupported by his treatment records and

inconsistent with the medical and other evidence of record and therefore unpersuasive.

### C.   Subjective Complaints

Plaintiff argues that the ALJ found her allegations were not entirely consistent with the medical and other evidence of record, but failed to compare her testimony to this medical evidence. (Doc. 21, p. 23). Plaintiff claims that the ALJ simply concluded that the RFC was supported by the evidence without providing reasons why her testimony was inconsistent with the evidence. (Doc. 21, p. 23-24).

Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or

other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ noted that Plaintiff provided minimal testimony at the hearing. (Tr. 185)). At the hearing, Yulian Maldonado, Plaintiff's son, provided most of the testimony, which the ALJ summarized. (Tr. 185). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to

cause the alleged symptoms, but Plaintiff's allegations about the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for reasons explained in the opinion. (Tr. 185).

Throughout the decision, the ALJ supported this finding that Plaintiff's allegations were not entirely consistent with the medical and other evidence of record. (Tr. 185-188). The ALJ first summarized the medical and other evidence of record. (Tr. 186-88). The ALJ discussed Plaintiff's son's third-party function report. (Tr. 188-89). She found the statements not fully consistent with the medical evidence of record. (Tr. 189). The ALJ noted that while Plaintiff had a history of breast cancer, she improved with treatment within a year of her diagnosis, and her physical exams were relatively benign. (Tr. 189). The ALJ also noted that while Plaintiff's son reported that Plaintiff was non-verbal, "the record is devoid of treatment notes supporting this allegation or psychiatric hospitalizations." (Tr. 189). The ALJ also relied on the State agency psychologists' findings that Plaintiff had moderate limitations in the "paragraph B" criteria. (Tr. 189). The ALJ noted that Plaintiff had not required psychiatric hospitalizations and her treating physicians noted that she cared for herself and performed activities of daily living. (Tr. 189). The ALJ then determined that based on the evidence of depression and anxiety disorders, she further restricted the RFC to: simple, one-to-four step work tasks; occasional

interaction with the public, coworkers, and supervisors; and slow and gradual changes in work settings. (Tr. 189).

The ALJ also relied on and found persuasive the opinions of the State agency physicians, who found Plaintiff able to perform work at a light level with additional limitations. (Tr. 189). The ALJ limited Plaintiff further based on all the evidence of record, including restricting the RFC to no exposure to unprotected heights or dangerous moving machinery. (Tr. 190). The ALJ again noted that the RFC is consistent with Plaintiff's treating physicians' notes that show that she is able to care for herself and perform activities of daily living. (Tr. 190).

Throughout the decision, the ALJ discussed Plaintiff's subjective complaints, her son's testimony at the hearing, and the third-party function report. The ALJ found Plaintiff's subjective allegations inconsistent with the medical and other evidence of record and supported this finding throughout the decision. When reviewing the decision as a whole, substantial evidence supports the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her allegations concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence of record.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 16, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties